UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ZULAY CORTES, o/b/o J.C., a minor child,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | Civ. No. 2:11-cv-5819 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Zulay Cortes brings this action on behalf of her minor son J.C. (hereinafter, "Claimant") pursuant to 42 U.S.C. §§405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying Claimant's application for Child's Supplemental Security Income ("SSI") benefits under Title II and Title XVI of the Social Security Act ("SSA"). There was no oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

    I.    **THE SSA's THREE STEP EVALUATION PROCESS FOR MINORS**

Under 42 U.S.C. §1382c(a)(3)(c), an individual under the age of eighteen must be "disabled" to receive SSI. Under the SSA, a child is considered "disabled," if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(I).

Under the authority of the SSA, the Commissioner has established a three-step evaluation process for determining whether a minor claimant is entitled to benefits. 20 C.F.R. § 416.924(a). At step one, the Commissioner determines whether the claimant is engaging in substantial gainful activity. An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit. 20 C.F.R. §416.972. If the individual is not engaging in such activity, the Commissioner must proceed to step two, and determine whether the claimant has a medically determinable "severe" impairment or a combination of impairments that is "severe." The regulations

do not directly define severe impairment; rather, they define what is not a severe impairment.  An impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.  20 C.F.R. §416.924(c).  If the claimant's impairment or combination of impairments is "severe" then the Commissioner must proceed to step three.  At step three, the Commissioner determines whether the claimant has an impairment or combination of impairments that meets a listed impairment or is either medically or functionally equivalent to a listed impairment, found in 20 C.F.R. Part 404 Subpart P, Appendix 1, Part B or A.  20 C.F.R. §416.924 (d).  In making this determination, the ALJ must assess the claimant's functioning in terms of six domains.  The first domain is acquiring and using information, which involves how well children perceive, think about, remember and use information.  20 C.F.R. §416.926a(g).  The second domain is attending and completing tasks, which involves how well a child is able to focus and maintain attention, and how well he is able to begin, carry through and finish activities, avoid impulsive thinking, and his ability to prioritize completing tasks.  20 C.F.R. §416.926a(h).  The third domain is interacting and relating with others, which considers how well a child is able to initiate and sustain emotional connections with others, develop and use language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of others' possessions.  This domain also includes an evaluation of language skills that children need to speak intelligibly.  20 C.F.R. §416.926a(i).  The fourth domain is moving about and manipulating objects, which considers how well a child is able to move his body from one place to another and how well a child moves and manipulates objects.  20 C.F.R. §416.926a(j).  The fifth domain is caring for yourself, which considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways.  It further considers how the child copes with stress and changes in the environment, and how well the child takes care of his own health, possessions, and living area.  20 C.F.R. §416.926a(k).  The sixth and final domain is health and physical well being, which considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects.  20 C.F.R. §416.926a(l).

     In each of those six domains a claimant's limitation is measured on a scale ranging from "no limitation," to "less than marked limitation," to "marked limitation," to an "extreme limitation."  A "marked" limitation is found where the impairment seriously interferes with a claimant's ability to independently initiate, sustain, or complete activities.  "Marked" limitation also means "more than moderate" but "less than extreme."  20 C.F.R. §926a(e)(2).  "Extreme" limitation is found where an impairment "very seriously" interferes with a claimant's ability to independently initiate, sustain, or complete activities.  "Extreme" limitation means "more than marked" and is a rating given to the worst limitation, but it does not require a total lack or loss of ability to function.  20 C.F.R. §416.926a(e)(3).  And only if the claimant's impairment or

combination of impairments results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain will a claimant under the age of eighteen be declared "disabled," 20 C.F.R. §416.926(a)-(d), and therefore entitled to receive SSI benefits.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Claimant was born on December 1, 2000, and at the time of the hearing was ten years old. (Administrative R. hereinafter "R." 9, ECF No. 7.) Claimant's mother filed an application for SSI on behalf of Claimant on December 8, 2008. (*Id*.) Claimant was initially denied benefits on August 10, 2009 and upon reconsideration on June 3, 2010. (*Id*.) On May 5, 2011 Claimant appeared before Administrative Law Judge Richard De Steno ("ALJ") for a hearing on his claims. (*Id*.)

On May 27, 2011, the ALJ issued an opinion denying Claimant benefits. (*Id*. at 24.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since December 8, 2009. (*Id*. at 15.) At step two, the ALJ found that Claimant's ADHD and learning disability were severe impairments. (*Id*. at 16.) At step three, the ALJ found that Claimant's impairments did not meet a listed impairment, nor were they medically or functionally equivalent to a listed impairment. (*Id*. at 16-23.) As a result, the ALJ ultimately reached a finding that Claimant was not disabled.

In making the functional determination at step three, the ALJ evaluated six domains of activity. The ALJ reached a finding of "less than marked" limitation in three of the six categories (acquiring and using information, attending and completing tasks, and interacting and relating with others), and a finding of "no limitation" in the other three categories (moving about and manipulating objects, caring for yourself, and health and physical well-being). (*Id*. at 18-23.)

In arriving at that determination the ALJ relied on a variety of evidentiary sources. The ALJ determined that the opinions of non-examining state agency medical consultants Dr. Leslie Williams and Dr. Wayne Tillman were entitled to "greater weight" under the regulations. 20 C.F.R. 416.927(e)(2); (*Id*. at 18.) Dr. Williams found that Claimant's suffered from ADHD. (*Id*. at 229.) Dr. Williams determined that the ADHD was severe, but did not meet, medically equal, or functionally equal the listed impairments, found in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B or A. (*Id*.) Dr. Williams found limitation in two domains (Attending and Completing Tasks and Interacting and Relating with Others). (R. 231-2.) In the other four categories Dr. Williams found no limitation. (*Id*.) Additionally, in the two limited categories, both were "less than marked" limitations. (*Id*. at 231.) Dr. Williams specifically noted that the Claimant had some problems with attention and focus, and the social use of language. (*Id*.) The doctor also reiterated Claimant's teacher's finding of significant improvement. (*Id*. at 234.)

3

Dr. Tillman conducted a reconsideration evaluation on May, 27, 2010. (*Id*. at 224.) Dr. Tillman found that claimant suffered from ADHD and a learning disability. (*Id*. at 223.) He further found that both impairments were severe, but did not meet, medically equal, or functionally equal the listed impairments. (*Id*.) Finally, Dr. Tillman found that Claimant had "less than marked" limitation in three domains (Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating with Others). (*Id*. at 225.) In the other three categories, Dr. Tillman found no limitation. (*Id*. at 226.)

The ALJ also relied on a series of assessments conducted by the Jersey City Board of Education. (*Id*. at 12.) Julio Rosario, a school psychologist, conducted a psychological assessment on October 20, 2008. (*Id*. at 201.) His report indicated that Claimant had a full-time inclusion teacher in the classroom with him. (*Id*.) Claimant's first grade teachers had described him as "immature, disorganized, easily distracted, and a short attention span." (*Id*. at 202.) Additionally, it was reported that he was diagnosed with ADHD. (*Id*.) At that assessment, he had overall age appropriate skills. (*Id*. at 204.) Karen Winds-Hall conducted a language assessment of Claimant for the Jersey City Board of Education on October 30, 2008. That assessment determined that Claimant had a moderate expressive and mild receptive language delay, which made him eligible to receive speech and language services. (*Id*. at 190.) That same day, he received an educational assessment conducted by Sandra Ford, a case manager, and Barbara Rowe. (*Id*. at 210.) That assessment revealed that Claimant had average scores relative to his grade level peers in broad mathematics, math calculation skills, math reasoning, and brief mathematics. (*Id*. at 209.) He also had scores within the average range for basic reading skills, brief reading, reading comprehension, and written expression. (*Id*.)

The ALJ also relied on a report filled out by Ms. Maribel Cruz, Claimant's first grade teacher. (*Id*. at 164.) Ms. Cruz indicated that Claimant had improved from the previous year. (*Id*. at 158.) She also indicated that he had no problems functioning relative to children his age without impairments in most measured categories. (*Id*. at 158-162.) And that the problems that she did observe were slight. (*Id*.) However, she also noted that when Claimant failed to take his medication, he had a difficult time with self-control. (*Id*. at 163.)

Claimant also received numerous psychological evaluations. Dr. Anthony Candela, a consultant evaluator performed a consultative examination on July 14, 2009. (*Id*. at 212.) Dr. Candela noted that Claimant was on two different medications, which Claimant's mother indicated have improved his ADHD symptoms, but not eliminated them. (*Id*. at 213.) Dr. Candela diagnosed Claimant with moderately severe to severe ADHD, and found that his intellectual ability was in the borderline to low average level. (*Id*. at 214.)

Claimant also received a comprehensive psychiatric evaluation on September 22, 2009 at Jersey City Medical Center. (*Id*. at 218.) That report indicated improved functioning since starting on medication. (*Id*.) However, it also indicated that Claimant was having problems reading and was left back in school. (*Id*.) Claimant was estimated to have a low average IQ, and limited judgment and insight. (*Id*. at 219.)

Based on that evidence, the ALJ denied Claimant's SSI application. Claimant filed a request for review of the ALJ's decision, which the Appeals Council denied on August 15, 2011. (*Id*. at 1.) Claimant's mother now brings the instant appeal challenging the ALJ's determination that Claimant was "not disabled" since July 17, 2008.

### III.   STANDARD OF REVIEW

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *Schaudeck v. Comm'r of Soc.Sec. Admin.*, 181 F.3d 429,431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus this Court is limited in its review in that it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### IV.   DISCUSSION

Claimant advances two[1] principal arguments on appeal: (1) that the ALJ's decision at step two is not supported by substantial evidence, because the ALJ did not consider all of Claimant's severe impairments; (2) that the ALJ erred in step three by failing to combine the Claimant's severe impairments for the purpose of making a disability determination.

#### 1.   The ALJ Adequately Considered Claimant's Severe Impairments

At step two of the three-step inquiry, the ALJ must determine whether the claimant has an impairment or combination of impairments that is "severe." *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). The claimant has the burden of showing that an impairment is severe. *Id*. at 146 n.5.

---

[1] Additionally, Claimant asserts that this court should reverse the ALJ's decision because substantial evidence in the record establishes eligibility for benefits. However, this is a misstatement of the law. The Court must instead consider whether substantial evidence in the administrative record supports the ALJ's finding, and if so, the Court will affirm the decision. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Claimant asserts that the ALJ erred at step two of the analysis when the ALJ failed to find that plaintiff suffered from additional cognitive defects that resulted in a finding of "borderline" intelligence. (Pl.'s Br. 17.) The Court disagrees. First, the ALJ noted that he was giving greater weight to the findings of the state agency medical consultants. (R. 18.) On the disability evaluation forms filled out by the consultants, neither listed "borderline" intelligence as a severe impairment. (*Id*. at 223, 229.) Additionally on multiple occasions, the ALJ's decision mentions that Claimant's mother has concerns about the Claimant's low intelligence. (*Id*. at 12-15.) This also indicates that the ALJ considered Claimant's borderline intellectual functioning, low Global Assessment of Functioning scores, and other related deficits in conjunction with Claimant's ADHD and learning disability. The ALJ clearly considered Claimant's level of intellectual functioning throughout the ALJ's decision. In short, the ALJ's findings at step two are supported by substantial evidence in the record.

### 2. Substantial Evidence Supports the ALJ's Decision that Claimant's Impairments Were Not Functionally Equivalent to One of the Listings

Claimant also asserts that the ALJ erred at step three of the analysis by finding that plaintiff suffered from "less than marked" limitation in three of six domains: (1) "Acquiring and Using Information;" (2) "Attending and Completing Tasks;" (3) "Interacting and Relating with Others."

In determining whether the ALJ erred at step three of the analysis, the Court recognizes that "no single piece of information can in isolation establish that a child has a marked limitation." *Watkins v. Comm'r of Soc. Sec.*, 131 F. App'x 362, 365 (3d. Cir. 2005). Instead the ALJ is to consider the entirety of the record when determining the degree to which the child's impairments affect his "functioning in day-to-day activities." *See* 20 C.F.R. §416.926a(e)(4)(ii)(B).

The ALJ found that Claimant suffered "less than marked" limitation in the domain of "Interacting and Relating with Others." (R. 21.) Plaintiff asserts that this finding is clearly wrong on the basis of a record that indicates aggressive behavior. (Pl's Br. 22.) However, substantial record evidence supports the ALJ's finding. First, the ALJ gave credit to the opinions of the state agency medical consultants, who each found that Claimant suffered "less than marked" limitation in this domain.  (*Id*. at 13-14.) And while the ALJ acknowledged the testimony of the Claimant's mother about Claimant's violent behavior, the ALJ found that the allegations were in excess of the objective evidence and the report from the Claimant's teacher. (*Id*. at 17.) Additionally, the ALJ credited Claimant's mother's statement in a psychiatric evaluation that Claimant's behavior has been improving since he started medication. (*Id*. at 21.) The ALJ also noted that Claimant's mother claimed in a function report that Claimant had friends his own age and gets along with his teacher and other adults. (*Id*. at 18.)

The ALJ also found that Claimant suffered from less than marked limitation in the domain of "Acquiring and Using Information." (*Id*. at 19.) Again, the ALJ credited the opinion of the state agency medical consultants who both concluded that Claimant's limitation in this domain was "less than marked." (*Id*. at 13-14.) Although the ALJ recognized that Claimant was retained during one year of school, received an "F" in a class, and had a borderline IQ score, the ALJ also found that Claimant had recently been progressing in school, as evidenced by the Claimant receiving a "C" in one class, a "B-" in another, and being promoted in reading groups. (*Id*.) Furthermore, the Claimant's teacher had stated that she did not observe that Claimant had any problems functioning in this domain relative to non-disabled students, and that Claimant's ability to focus had improved since he started taking medication. (*Id*.)

Finally, the ALJ found that Claimant had less than marked limitation in the domain of "Attending and Completing Tasks." (*Id*. at 20.) In making this finding, the ALJ credited the opinions of the state agency medical consultants who both found that Claimant's suffered "less than marked" limitation in this domain. The ALJ acknowledged that Claimant had problems with focus and attention, but recognized that Claimant and his mother both testified that his problems with focus and attention were improving on medication. (*Id*.) The ALJ also called attention to Claimant's teacher's report indicating Claimant did not have significant limitations in this domain. (*Id*.)

In short, the finding of the ALJ that Claimant suffers from "less than marked" limitation in three of the domains is supported by substantial evidence in the record, and therefore does not support reversal.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

                                                     /s/William J. Martini  
                                                    **WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 4, 2013**